# **Exhibit 2**

## ASSET PROTECTION AGREEMENT

This Asset Protection Agreement ("***Agreement***") is entered into by and between the undersigned employee ("***Employee***") and Performance Health Supply, LLC., a Minnesota corporation with its principal place of business in Warrenville, Illinois (the "***Company***"), and is effective on the date signed by Employee. In consideration of the mutual covenants hereinafter made by each party to the other, Employee and the Company agree as follows:

### Employment

1.   The Company agrees to employ and/or to continue to employ Employee in accordance with the terms of this Agreement. Employee's compensation, benefits, duties and assignments shall be established from time-to-time by the Company and may be changed upon notice to Employee.

2.   Employee acknowledges that their employment or continued employment with the Company (subject to paragraph 5 of this Agreement) is contingent upon Employee entering into and agreeing to abide by the terms of this Agreement. In further consideration of Employee's entering into this Agreement, Employee shall be entitled to participate in the Sales Employee Commission Plan, as may be amended by the Company from time to time and shall be paid to a one-time payment of $500, less required and authorized withholding, within 30 days of Employee entering into this Agreement. Employee shall not be eligible to participate or to continue to participate in the Sales Employee Commission Plan or to receive the Commission Guaranty or one-time payment described in this paragraph if Employee does not enter into this Agreement.

3.   Employee represents and warrants that Employee is not a party to or bound by any contractual, statutory or common law obligation that prohibits or restricts, or that would be violated or breached, by virtue of their employment by the Company. Employee agrees not to use or disclose the trade secrets and other confidential information of a prior employer (excluding a predecessor or affiliate of the Company) in the course of their employment with the Company.

4.   Employee agrees that during their employment with the Company, Employee will devote their full energies, abilities, attention, and business time to the performance of their employment duties and responsibilities for the Company, and will not engage in any activity which conflicts or interferes with, or in any way compromises, the performance of such duties and responsibilities.

5.   Employee is employed by the Company "at will" and either the Company or the Employee may terminate the employment relationship at any time, for any reason, without notice, warning or cause.

### Asset Protection

6.   Employee recognizes that by virtue of their employment with the Company, Employee will be granted otherwise prohibited access to trade secrets and other confidential and proprietary information which is not known to the Company's competitors or within the Company's industry generally, which was developed by the Company over a long period of time and/or at substantial expense, and which is confidential in nature or otherwise of great competitive value to the

Company. This information ("***Confidential Information***") includes, but is not limited to, trade secrets, information relating to the Company's production practices and methods of doing business; sales, pricing, marketing, and service strategies, programs, and procedures; customers, including, but not limited to, their particularized requirements and preferences, their product specifications, the identity and authority of their key contact persons, payment methods, and order histories and patterns; the potential for sale to identified prospective customers; service, product and material costs; pricing structures; subcontractor prices; managed care contractor lists; bids; responses to requests for proposals; vendors and sources of supply; financial position and business plans; computer programs and databases; research projects; new product and service developments; compositions, formulas, patterns, compilations, programs, techniques, devices, processes, plans, designs, and drawings; and any other information of the Company, its affiliates, or any of its vendors or customers, which the Company informs Employee, or which Employee should know by virtue of Employee's position or the circumstances in which Employee learned it, is to be kept confidential. Confidential Information does not include information that is publicly available or otherwise known in the industry but not as a result of Employee's violation of Employee's obligations under this Agreement.

(a) Employee will not, at any time during or after employment with the Company, disclose, use or permit others to use any Confidential Information, except as required in the course of s employment for the benefit of the Company.

(b) Employee will take all reasonable measures during and after employment with the Company to protect the Confidential Information from any accidental or unauthorized disclosure or use.

(c) Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (i) is made (A) in confidence to a federal, state, or local government official, either directly or indirectly, or to their attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Employee acknowledges that an individual suing an employer for retaliation based on the reporting of a suspected violation of law may disclose a trade secret to his or her attorney and use the trade secret information in the court proceeding, so long as any document containing the trade secret is filed under seal and the individual does not disclose the trade secret except pursuant to court order.

7. Upon the voluntary or involuntary termination of employment with the Company, or at any time requested by the Company, Employee shall return to the Company all literature, correspondence, memoranda, reports, summaries, manuals, proposals, contracts, documents, computer disks and other electronic storage media, computer programs, mobile/smart phones, pagers, computers, and other materials and equipment of any kind which relate to the business of the Company, including specifically, but not exclusively, all materials which comprise or refer to the Company's Confidential Information. It is understood and agreed that all such materials are, and will remain, the exclusive property of the Company and that Employee will not retain any copy, facsimile or note (in electronic or hard-copy form) memorializing any such materials or the contents thereof. Further while employed by the Company, Employee shall not, except for the benefit of and the consent of the Company, use, copy or duplicate (electronically or otherwise) any Company documents or other materials.

8.   Employee agrees as follows with regard to any developments that relate to the Company's business or Confidential Information, or that Employee conceives, makes, develops or acquires within the scope of employment by the Company, including, but not limited to, any trade secrets, discoveries, inventions, improvements, ideas, programs, formulas, diagrams, designs, plans and drawings, whether or not reduced to writing, patented, copyrighted or trademarked ("***Developments***"):

(a)  Employee shall promptly and fully disclose all Developments to the Company, and shall prepare, maintain, and make available to the Company adequate and current written records of such Developments and all modifications, research, and studies made or undertaken by Employee with respect thereto.

(b)  All Developments and related records shall become and remain the exclusive property of the Company and, to the extent Employee has any rights thereto, Employee hereby assigns all such rights, title, and interest to the Company and waives any moral rights Employee may have in any Developments.

(c)  Upon request by the Company, Employee, at any time, whether during or after employment by the Company, shall execute, acknowledge and deliver to the Company all assignments and other documents which the Company deems necessary or desirable to: (i) vest the Company with full and exclusive right, title, and interest to such Developments, and (ii) enable the Company to file and prosecute an application for, or acquire, maintain or enforce, all letters of patent, trademark registrations, and copyrights covering such Developments.

(d)  Employee understands that the foregoing provisions regarding assignments do not apply to any Developments for which no equipment, supplies, facility or trade secret information of the Company was used, and which were developed entirely on Employee's own time, unless the Developments: (i) relate to the Company's business or to its actual or demonstrably anticipated research or development, or (ii) result from any work performed by Employee for the Company.

9.   Employee recognizes that by virtue of their employment with the Company, Employee may be introduced to and extensively involved in the servicing of long-standing customers of the Company; that Employee may be extensively involved in soliciting and servicing new customers identified, developed and/or secured by the Company during employment; and that Employee may be afforded numerous and extensive resources to assist Employee in soliciting and servicing those customers. Employee understands and agrees that all efforts expended in soliciting and servicing the Company's customers shall be for the exclusive benefit of the Company; that the Company shall secure and retain a proprietary interest in all such customers; and that Employee will not undertake any action which could in any way disturb the Company's relationship with its customers.

10.  Employee agrees that, during Employee's employment with the Company and for a period of twelve (12) months following the voluntary or involuntary termination of  employment with the Company for any reason (the "***Restricted Period***"), Employee will not, directly or indirectly, hire, employ, engage, or attempt to hire, employ or engage any Restricted Individual, or otherwise solicit, request, entice, or induce any Restricted Individual to terminate his or her employment or engagement with the Company. The term "***Restricted Individual***" means an employee of, or

independent contractor engaged by the Company with whom Employee interacted for business purposes at any time during the six (6) month period immediately preceding the termination of Employee's employment with the Company and who was employed or engaged by the Company at any time within the last sixty (60) days of employment with the Company.

11. Employee acknowledges the Company's legitimate interest in protecting its customers for a reasonable period of time following the termination of employment. Accordingly, Employee agrees that during the Restricted Period, Employee will not, directly or indirectly, solicit or accept business from, or provide products or services to, any Restricted Customer, where such business, products or services would be competitive with the Company's business, products or services. The term "**Restricted Customer**" means (i) a customer of the Company (including, without limitation, a group purchasing organization) to whom Employee sold, rendered or provided the Company's products or services at any time during the one (1) year period immediately preceding the termination of Employee's employment; (ii) any entity (including, without limitation, a group purchasing organization) for which Employee orchestrated, developed, supervised, coordinated or participated in pricing strategy, marketing strategy, marketing plans and marketing campaigns; bid submissions; or responses to requests for proposals on behalf of the Company at any time during the six (6) month period immediately preceding the termination of employment; (iii) any entity (including, without limitation, a group purchasing organization) as to which Employee acquired Confidential Information at any time during Employee's employment with the Company.

12. Employee acknowledges the Company's legitimate interest in protecting its Confidential Information, customer relationships, and goodwill for a reasonable period of time following the termination of employment. Accordingly, Employee agrees that during the Restricted Period, Employee will not, anywhere within the Restricted Area, engage in, own, manage, operate, finance, control, represent, advise, or work in a sales related capacity with (whether as an agent, representative, employee, consultant, independent contractor, advisor, or in any other role) a Competitive Business. Nothing herein shall preclude Employee from owning less than one percent (1%) of any entity traded on a recognized stock exchange. The term "**Restricted Area**" means the sales territory assigned to the Employee at any time during the last twelve (12) months of employment with the Company. The term "**Competitive Business**" means an entity or person that sells or provides products or services that are competitive with those products and services sold or provided by the Company at any time during the last six (6) months of employment with the Company and (i) for which Employee was involved in providing on behalf of the Company at any time during the last six (6) months of employment with the Company or (ii) for which Employee has Confidential Information; provided, where an entity has distinct organizational divisions, only those organizational divisions that are competitive with the Company shall be considered a Competitive Business.

13. Employee agrees that during the Restricted Period, Employee will not, directly or indirectly, interfere, or attempt to interfere with any relationship the Company has with any of its vendors or suppliers.

14. The Restricted Period for any restriction set forth in paragraphs 10, 11, 12 and 13 of this Agreement shall be extended by the period of Employee's breach of Employee's obligations under those paragraphs.

15. Following the termination of employment with the Company, Employee shall not make any statement that disparages or defames the Company's products or services, or disparages or defames any owner, principal, officer, employee or agent of the Company. Notwithstanding the foregoing, nothing in this paragraph shall preclude Employee from or filing a charge of discrimination with or participating in an investigation by, the Equal Employment Opportunity Commission, an analogous state or local fair employment practices agency or any other governmental investigation agency.

**Additional Provisions**

16. Employee hereby agrees that any suit, action or proceeding relating in any way to this Agreement shall be brought and enforced in the 18th Judicial Circuit Court, DuPage County, Illinois or the United States District Court for the Northern District of Illinois, Eastern Division, and in either case Employee hereby submits to the jurisdiction of each such court. Employee hereby waives and agrees not to assert, by way of motion or otherwise, in any such suit, action or proceeding, any right of removal, any claim that Employee is not personally subject to the jurisdiction of the above-named courts, that the suit, action or proceeding is brought in an inconvenient forum or that the venue of the suit, action or proceeding is improper. Employee consents and agrees to service of process or other legal summons for purpose of any such suit, action or proceeding by registered mail addressed to Employee at Employee's address listed in the business records of the Company.

17. The provisions of this Agreement are intended to be interpreted in a manner which makes them valid, legal, and enforceable. In the event any provision of this Agreement is found to be partially or wholly invalid, illegal or unenforceable, such provision shall be modified or restricted to the extent and in the manner necessary to render it valid, legal, and enforceable. It is expressly understood and agreed between Employee and the Company that such modification or restriction may be accomplished by mutual accord between the parties or, alternatively, by disposition of a court. If such provision cannot under any circumstances be so modified or restricted, it shall be excised from this Agreement without affecting the validity, legality or enforceability of any of the remaining provisions.

18. Employee understands and agrees that the obligations and other provisions set forth in paragraphs 6 through 13 and 15 of this Agreement shall apply regardless of the reason for the termination of employment, whether such termination was voluntary or involuntary, and whether such termination was with or without cause.

19. This Agreement supersedes all Company policies and practices, and all previous oral and written agreements, understandings and communications between Employee and the Company, only to the extent that they are inconsistent with the terms of this Agreement; provided, nothing in this Agreement supersedes any other contractual post-employment obligations Employee owes to the Company and that the post-employment obligations in this Agreement shall be in addition to, not in lieu of those other contractual post-employment obligations.

20. The failure by the Company to require the performance of any provision of this Agreement shall in no way affect the rights of the Company to enforce the same in the future, nor shall the waiver by the Company of any breach or evasion of any provision of this Agreement be interpreted as a waiver with respect to any subsequent breach or evasion.

21.  No waiver, modification or amendment of this Agreement shall be valid and enforceable unless it is in writing, is specifically designated as a waiver, modification or amendment of this Agreement, and is signed by Employee and the Company's Chief Executive Officer.

22.  This Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the Company. Employee consents to the assignment by the Company or its successors of Employee's obligations under this Agreement to any other party without further consent of Employee.

23.  This Agreement and any amendments hereto shall be governed by and interpreted in accordance with the laws of the State of Illinois without giving effect to the principles of conflicts of laws thereof.

24.  This Agreement may be executed in one or more counterparts, all of which, taken together, shall constitute one and the same agreement.

**EMPLOYEE**                                    **PERFORMANCE HEALTH SUPPLY, LLC.**

*Alfred Ausiello*
_____                             By: _____
Signature

Alfred Ausiello                                 Title: _____
_____
Print Name (please print legibly)               Date: _____

Date: 5/22/2025
      _____